# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JAIME HOLT | No. 3:21-cr-80 (MPS) |

## RULING ON MOTION TO SUPPRESS

### I.     Introduction

On May 11, 2021, a grand jury returned a three-count Indictment charging Defendant Jaime Holt with (1) possession with intent to distribute 28 grams or more of cocaine base, (2) possession of a firearm in furtherance of a drug trafficking crime, and (3) unlawful possession of a firearm by a felon.  ECF No. 1.  Holt was arrested by the Bloomfield Police Department following a traffic stop on March 31, 2021.  He moves to suppress his post-arrest statements and all evidence seized from his vehicle.  ECF No. 19 at 5.  For the reasons set forth below, I DENY Holt's motion to suppress.

### II.     Factual Background

The following facts are drawn from the defendant's memorandum in support of his motion to suppress and supporting exhibits.

On March 31, 2021, Bloomfield police officer Brendan Danaher was monitoring traffic along a stretch of Bloomfield Avenue/Route 89.  ECF No. 19-1, Ex. 1 at 4.[1]  Danaher observed a car traveling past above the posted speed limit of 35 miles per hour.  *Id.*[2]  "The lidar unit

---

[1] This Ruling cites ECF page numbers throughout.
[2] Holt states in his motion that he "puts the government to its burden of proving that Danaher in fact observed Holt violating traffic laws justifying his seizure."  ECF No. 19 at 6.  As discussed below, Holt presents no evidence that enables this Court to conclude that this fact is disputed.

indicated the speed of the vehicle as 57 MPH at a distance of 287.8 feet." *Id.*  Danaher pulled

out into traffic, turned on his lights and siren, and stopped the car.  *Id.*

      Before approaching the car, Danaher radioed the plate information, presumably to a

dispatch officer.  ECF No. 19-1, Ex. 3 at 0:55.  Danaher then approached the car and began a

conversation with Holt.  *Id.* at 1:24; Ex. 1 at 5.  He explained that Holt had been driving almost

60 mph in a 35-mph zone.  Ex. 3 at 1:24.  He asked for Holt's license, but Holt explained that he

did not have one.  *Id*. at 1:40, 2:25; Ex. 1 at 5.  According to Danaher, "[w]hile speaking to

H[olt] [he] detected an odor emanating from the interior of the vehicle that [he] recognized based

on [his] training and experience as marijuana."  Ex. 1 at 5.  Danaher then told Holt, "just hang

tight, I'll be with you."  Ex. 3 at 2:40.

      About seven minutes passed before Danaher returned to Holt.  ECF No. 19-1, Ex. 2 at

2:50-9:40.  During that time, Danaher requested additional police presence, and Sergeant

Michael DiManno and Officer Sykes arrived shortly afterward.  Ex. 1 at 5.  After DiManno

arrived, Danaher told him, "um, he's got a pending case for possession of a pistol.  He's got a

pretty big history.  Right now it's just the suspended license and the speeding … but if I pull him

out [unintelligible]."  Ex. 3 at 9:06-9:20.  Danaher then prepared to approach the car, saying,

"let's see if I remember how to do this.  It's been so long."  *Id.* at 9:20.

      Upon reapproaching Holt's car, Danaher ordered Holt out of the vehicle.  *Id.* at 9:36.  He

told Holt, "I could smell the weed in the car.  You got anything more than blunts or anything in

there," to which Holt responded, "I got a blunt."  *Id.* at 9:48.  Danaher responded, "I don't care

about little stuff like that."  *Id.* at 9:55.  Danaher then conducted a pat-down search, which

revealed no weapons or contraband.  *Id.* at 10:00; Ex. 1 at 5.  In his report, Danaher explained

that he conducted the pat-down because, based on his training and experience, he knew "that

2

individuals who engage in the sale and consumption of narcotics frequently carry sharp objects on their persons to facilitate consumption." Ex. 1 at 5. Danaher told Holt that he would not handcuff him "unless [Holt] g[a]ve [him] a reason to." Ex. 3 at 10:13.

Danaher than brought his "patrol and narcotic detection certified canine, K9 Jager" to the vehicle. Ex. 1 at 5. According to Danaher, "an exterior sniff of the vehicle was conducted. K9 Jager indicated to the presence of an odor of narcotics on the open driver's window and front door seam. During the interior sniff K9 Jager indicated to the presence of an odor of narcotics on the center console compartment." *Id.* at 6. Holt contends that Danaher "not only opened the car door to let the dog sniff inside the car, but he also affirmatively instructed the dog to 'step in.'" ECF No. 19 at 21 (describing video footage found in Ex. 3 at 10:30-11:10).

The officers then searched the vehicle and found: a plastic bag labeled "Smokeez" which contained a substance that appeared to be marijuana, a black digital scale, a "large burnt hand rolled marijuana cigarette or a 'blunt,'" and a baggie of what appeared to be crack cocaine. Ex. 1 at 6. Danaher placed Holt in handcuffs, and the officers placed him in the back of Sykes's police cruiser. *Id.* Danaher read Holt his Miranda rights. *Id.* Holt ultimately made statements while in custody.

Danaher and DiManno searched Holt's vehicle further. *Id.* They ultimately recovered (in addition to the evidence already described): three black digital scales, a baggie of what appeared to be crack cocaine, empty clear plastic baggies, five cellphones, and a loaded pistol. *Id.*

At no time during this sequence of events did Holt state that he had a medical marijuana card or produce such a card, and he does not now claim that he ever had such a card. ECF No. 20 at 10.

3

### III.     Discussion

#### a.   Need for Evidentiary Hearing

Holt argues that an evidentiary hearing is required to resolve his motion to dismiss.

"[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are

sufficiently definite, specific, and nonconjectural to enable the court to conclude that contested

issues of fact going to the validity of the search are in question." *United States v. Watson*, 404

F.3d 163, 167 (2d Cir. 2005) (internal quotation marks omitted).  Holt's moving papers do not

enable this Court to conclude that there are contested issues of fact that must be resolved in order

for this Court to rule on his motion to suppress.

While Holt states in his motion that he "puts the government to its burden of proving that

Danaher in fact observed Holt violating traffic laws justifying his seizure," ECF No. 19 at 6,

denials made in legal memoranda are not evidence and do not create an issue of fact.  *See United

States v. Mottley*, 130 F. App'x 508, 510 (2d Cir. 2005) ("The statements offered … by

Mottley's attorney in the reply brief before the district court … did not create an issue of fact.").

The sworn police report attached to Holt's motion indicates that he was speeding, and Holt

provides no evidence from which the Court could infer that he was not.  So an evidentiary

hearing on the issue of whether Holt committed a traffic violation is not required.

Holt also challenges the Government's claim that Danaher's K9 "indicated," thereby

signaling that drugs were present in Holt's car.  ECF No. 19 at 22.  As the Court does not rely on

whether or not the K9 "indicated" in concluding that the officers had probable cause to search

Holt's car, an evidentiary hearing on that issue is also not required.

Finally, Holt argues that "[t]o the extent the government asserts that Officer Danaher was

in fact able to identify the odor he perceived as belonging to marijuana rather than hemp," an

evidentiary hearing on that issue is required.  ECF No. 19 at 18.  The Government does not make

such an assertion, and as discussed below it need not do so.  Thus, no evidentiary hearing on this

issue is required.

> **b.  Motion to Suppress**

Holt argues that his post-arrest statements and all evidence seized from his car should be

suppressed because (1) Danaher seized him without a warrant, (2) Danaher unlawfully prolonged

that seizure, (3) Danaher unlawfully frisked him, and (4) Danaher and DiManno searched his

vehicle without probable cause.

Seizure "Without a Warrant" (Basis for Initial Vehicle Stop)[3]

As discussed above, Holt states that he "puts the government to its burden of proving that

Danaher in fact observed [him] violating traffic laws justifying his seizure."  ECF No. 19 at 6.

Also as already discussed, the evidence that Holt was driving above the speed limit when

Danaher stopped his car is undisputed.  Reasonable suspicion of a traffic violation justifies the

stop of an automobile.  *United States v. Stewart*, 551 F.3d 187, 193 (2d Cir. 2009) ("[W]e now

hold unambiguously that the reasonable suspicion of a traffic violation provides a sufficient basis

under the Fourth Amendment for law enforcement officers to make a traffic stop.")  Reasonable

suspicion is more than a "hunch" and requires "specific and articulable facts which, together

with rational inferences from those facts, provide detaining officers with a particularized and

objective basis for suspecting wrongdoing."  *United States v. Bailey*, 743 F.3d 322, 332 (2d Cir.

2014) (internal quotation marks and citations omitted).  "The standard is 'not high.'" *Id.* (quoting

*Richards v. Wisconsin*, 520 U.S. 385, 394 (1997)).  It is "less than probable cause, requiring only

---

[3] Although Holt's brief refers to the traffic stop as a "seizure without a warrant," the Court infers that Holt is arguing that the stop was not supported by reasonable suspicion or probable cause.  A warrant is not required for a traffic stop that is based on an observed motor vehicle violation.

facts sufficient to give rise to a reasonable suspicion that criminal activity 'may be afoot.'" *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).  When assessing reasonable suspicion, a "court must view the totality of the circumstances through the eyes of a reasonable and cautious police officer on the scene." *Id.*  The undisputed evidence before the Court, namely the police report describing "the lidar unit indicat[ing]" a speed of 57 MPH in a 35 MPH zone, shows that Danaher had reasonable suspicion that Holt had committed a speeding violation when he stopped Holt's car.  Thus, Danaher's initial seizure of Holt was justified.

Prolongation of the Seizure

Holt next argues that, regardless of whether the initial traffic stop was lawful, Danaher unlawfully prolonged that stop.  "[A]uthority for a traffic-stop seizure ends when the tasks tied to the traffic infraction are—or reasonably should have been—completed, unless the officer develops reasonable suspicion of criminal activity sufficient to extend the stop." *United States v. Santillan*, 902 F.3d 49, 56 (2d Cir. 2018) (citing *Rodriguez v. United States*, 135 S.Ct. 1609, 1614-1615 (2015)).  The Second Circuit has held that the odor of marijuana emanating from a vehicle provides officers with the "particularized and objective basis for suspecting legal wrongdoing" required to justify prolongation of a vehicle stop.  *United States v. Jenkins*, 452 F.3d 207, 214 (2d Cir. 2006) (internal quotation marks omitted).  Here, Danaher "detected an odor emanating from the interior of the vehicle that [he] recognized based on [his] training and experience as marijuana" during his initial interaction with Holt upon stopping the car.  Ex. 1 at 5.  The Government argues—and the Court agrees—that, under the Second Circuit's holding in *Jenkins*, Danaher's detection of the marijuana odor was sufficient to support reasonable suspicion that justified his continued seizure of Holt.

Holt advances two arguments for why the marijuana odor emanating from the car was insufficient to support reasonable suspicion, neither of which prove successful.  First, Holt argues that the odor of marijuana alone cannot justify the stop because the odor of marijuana is virtually indistinguishable from that of hemp, which was legal to possess at the time of Holt's arrest.  Holt contends that because there was no way for Danaher to know whether the odor he detected was from marijuana or from legal hemp, Danaher lacked reasonable suspicion of criminal conduct.

This argument is at odds with a recent, unpublished Second Circuit decision that holds that an officer's mistake regarding whether a substance is marijuana or hemp does not undermine the reasonableness of that officer's belief that such a substance is marijuana.  *See United States v. Bignon,* 813 F. App'x 34 (2d Cir. 2020) (summary order).  In *Bignon,* the defendant appealed the district court's denial of his motion to suppress evidence discovered by police during a search of his backpack following his arrest on a charge of smoking marijuana.  *Id.* at 35.  Police in that case suspected the defendant of smoking marijuana because they saw smoke that "appeared thicker and whiter than tobacco smoke," observed the defendant "holding the cigarette [at issue] between his thumb and index finger," and smelled "a slight odor of weed in the air," and because the defendant reacted to the officers' approach by discarding his cigarette and walking away from them.  *Id.* at 35-37.  Although the defendant protested that the cigarette contained hemp and not marijuana, the officers arrested him.  *Id.* at 36.  Lab tests ultimately confirmed that the cigarette did not contain marijuana.  *Id.* at 37.

Nevertheless, the Second Circuit held that "probable cause to arrest [the defendant] for possession of marijuana in violation of [New York law]" existed because "a reasonably prudent person could believe that [the defendant] was smoking marijuana based on [the facts outlined

above]." *Id.* The Court emphasized that this conclusion was unaffected by the subsequent

discovery that the cigarette did not actually contain marijuana because "[p]robable cause requires

only a probability or substantial chance of criminal activity, not an actual showing of such

activity." *Id.* (internal quotation marks omitted).

The *Bignon* decision thus confirms that the mere possibility that a substance could be

legal hemp does not undermine the reasonableness of the belief that such a substance is

marijuana. It clarifies that there is no requirement that an officer "positively identify a substance

as marijuana," ECF No. 19 at 17, in order to satisfy the probable cause standard. Because there

is no such requirement for probable cause, there certainly is not one for reasonable suspicion,

which demands "less than probable cause." *Bailey*, 743 F.3d at 332. Thus, the legal status of

hemp at the time of Holt's arrest offers little support for Holt's argument that Danaher's

detection of an odor that he believed, based on his training and experience, to be that of

marijuana did not provide a basis for reasonable suspicion justifying his continued seizure of

Holt.

Holt's second argument is that the odor of marijuana alone cannot justify the stop

because at the time of his arrest not all possession of marijuana constituted criminal conduct.

Specifically, Connecticut law at the time provided that the penalty for a first offense of

possession of less than one-half ounce of marijuana was a $150 fine,[4] and it permitted

individuals with valid medical marijuana certificates to possess up to two-and-one-half ounces of

marijuana per month.[5] While possession of less than one-half ounce of marijuana without a

---

[4] Conn. Gen. Stat. §21a-279a(a)-(b) (effective July 1, 2011 to June 30, 2021) provides: "(a) Any person who possesses or has under his control less than one-half ounce of a cannabis-type substance … shall (1) for a first offense, be fined one hundred fifty dollars, and (2) for a subsequent offense, be fined not less than two hundred dollars or more than five hundred dollars. (b) The law enforcement officer issuing a complaint for violation of subsection (a) of this section shall seize the cannabis-type substance and cause such substance to be destroyed as contraband in accordance with law."
[5] Conn. Gen. Stat. §21a-408a (effective Jan. 1, 2017 to June 30, 2021).

medical marijuana certificate remained illegal, it was no longer a crime.[6]  Holt argues that

because not all marijuana possession was criminal, the odor of marijuana did not necessarily

indicate legal wrongdoing and could not, therefore, provide reasonable suspicion that justified

prolonging the stop.

The possibility that the odor of marijuana Danaher detected could have come from

marijuana that was legally (or non-criminally) possessed does not mean that an officer in

Danaher's position could not reasonably believe that criminal activity was afoot.  At the time of

Holt's arrest, possession of more than one-half-ounce of marijuana without a medical marijuana

certificate constituted criminal conduct.  Further, any consumption of marijuana in, for example,

a public place or moving vehicle remained illegal, even for those with such certificates.  *See*

Conn. Gen. Stat. § 21a-408a(b)(2) (effective Jan. 1, 2017 to June 30, 2021).  Against this

backdrop, just as the possibility that the odor Danaher detected could have come from hemp does

not undermine the reasonableness of his belief that it came from marijuana, the possibility that

the odor could have come from legally (or non-criminally) possessed marijuana does not

undermine the reasonableness of his belief that it came from criminally possessed marijuana.

Because, for example, possession of more than one-half ounce of marijuana without a medical

marijuana certificate and any use of marijuana in a moving vehicle remained criminalized, the

odor of marijuana could lead a reasonable officer in Danaher's position to conclude that some

form of criminal activity was afoot.  *See Santillan*, 902 F.3d at 56 ("Conduct that is as consistent

with innocence as with guilt may provide the basis for reasonable suspicion where there is some

indication of possible illicit activity.").

---

[6] Conn. Gen. Stat. §21a-279(a)(1) (effective Oct. 1, 2015 to June 30, 2021) ("Any person who possesses or has under such person's control any quantity of any controlled substance, *except less than one-half ounce of a cannabis-type substance and except as authorized in this chapter*, shall be guilty of a class A misdemeanor.") (emphasis added).

While Holt points to the Ninth Circuit's decision in *United States v. Martinez*, 811 F. App'x 396 (2020), as support for his argument that marijuana's changing legal status renders marijuana odor insufficient to support reasonable suspicion, the Ninth Circuit has also held—in a case with facts closer to those here—that the odor of marijuana can support a finding of probable cause even when some marijuana possession is legal.  In *Martinez*, the Ninth Circuit held, on appeal of a decision denying a motion to suppress, that the district court erred in relying on cases that held "at a time when possession of any quantity of marijuana was unlawful" under California law that the odor of marijuana alone provided probable cause to search a vehicle for violations of state marijuana laws because the state had since legalized possession of up to 28.5 grams of marijuana.  811 F. App'x at  397.  The decision in *Martinez* addressed probable cause rather than the lesser standard of reasonable suspicion, and it is not binding on this Court in any event.  Further, in *United States v. White*, the Ninth Circuit held that the odor of marijuana was sufficient to provide probable cause to search a vehicle when possession of medical marijuana was legal under Nevada law but possession was otherwise a state crime.  732 F. App'x 597, 598 (9th Cir. 2018) ("White argues that there is no probable cause because Nevada had legalized medical marijuana at the time of the search … and he had a medical marijuana card.  But, White never explained this to the investigating officers, and possession of nonmedical marijuana was then still a state crime.")

Thus, this Court concludes that the possibility that the odor Danaher detected may have emanated from hemp or non-criminally possessed marijuana does not render his suspicion that the odor was indicative of criminal wrongdoing unreasonable.  Rather, the odor provided him a "particularized and objective basis for suspecting legal wrongdoing" that justified his prolongation of the traffic stop.

Frisk

Holt argues that Danaher unlawfully frisked him but concedes that the frisk recovered no evidence.  ECF No. 19 at 20.  As a result, this Court need not decide whether the frisk was lawful in determining whether to suppress Holt's statements and the evidence recovered from his car.

Vehicle Search

Finally, Holt argues that the police officers searched his vehicle without probable cause. Searches conducted without a warrant "are *per se* unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions."  *United States v. Navas*, 597 F.3d 492, 497 (2d Cir. 2010) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).  One such exception is the automobile exception, which permits law enforcement to "conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime."  *United States v. Howard*, 489 F.3d 484, 492 (2d Cir. 2007) (quoting *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004)).  "[P]robable cause exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that evidence of a crime will be found in the place to be searched."  *Gaskin*, 364 F.3d at 456 (2d Cir. 2004) (internal quotation marks, modifications, and citations omitted).  "Where the probable cause upon which the search is based extends to the entire vehicle, the permissible scope of the search pursuant to [the automobile] exception includes every part of the vehicle and its contents including all containers and packages that may conceal the object of the search."  *Navas*, 597 F.3d at 497 (internal quotation marks, modifications, and citations omitted).

11

The Second Circuit has recently held that the odor of marijuana, combined with a defendant's statement that he had been smoking marijuana earlier, justified a search of the defendant's vehicle. *United States v. Goolsby*, 820 F. App'x 47, 49 (2d Cir. 2020) (summary order), *cert. denied* 141 S. Ct. 2818 (2021). And numerous district courts within this Circuit have held, also recently, that the odor of marijuana alone provides probable cause. *See, e.g.*, *United States v. Miller*, No. 18-cr-395 (NGG), 2019 WL 2088248, at *4 (E.D.N.Y. May 13, 2019) ("As the Government states—and Defendant does not dispute—such a smell [of marijuana] is itself sufficient to establish probable cause." (collecting cases)); *United States v. Spain*, No. 18-cr-569 (CM), 2019 WL 948814, at *3 (S.D.N.Y. Feb. 13, 2019) ("The Government argues that under the automobile exception, a generalized smell of marijuana provides police with the right to search a defendant's vehicle and any containers within the vehicle where marijuana might be stored … The Court agrees.") (collecting cases; internal citations and quotation marks omitted)). While Holt points to a decision from this district as support for his argument that the odor of marijuana could not provide support for the vehicle search, the Court in that case did not hold that the odor of marijuana could not support the search of a vehicle, but rather that the Court was "unconvinced" that the odor of marijuana alone was sufficient to support an arrest for driving under the influence. *United States v. Hampton*, No. 17-cr-84 (VLB), 2018 WL 340024, at *7 (D. Conn. Jan. 9, 2018) ("The Court is unconvinced that the odor of marijuana alone, where the officer did not state that he observed smoke or smelled 'burning' marijuana, and where the officer noted no evidence of impairment, is sufficient to support an arrest for driving under the influence in violation of Conn. Gen. Stat. § 14-227a(1).").

The Government argues that Danaher's detection of the marijuana odor combined with Holt's statement that he had a blunt were together sufficient to justify the officers' search of the vehicle.  The Court agrees that the odor of marijuana and Holt's statement, taken together, were sufficient to provide probable cause to believe that Holt's vehicle contained contraband.  *See Goolsby*, 820 F. App'x at 49 (relying on officer's smell of burnt marijuana and defendant's statement that he had been smoking earlier in upholding finding of probable cause to search vehicle).

Holt argues that the officers lacked probable cause to search the vehicle for the same reasons that Danaher lacked reasonable suspicion to prolong the traffic stop, namely, that the odor of marijuana and Holt's statement regarding possessing a blunt could be evidence of lawful possession of hemp and/or lawful (or non-criminal) possession of marijuana.  For the reasons discussed above in the context of the Court's reasonable suspicion analysis, these arguments prove unavailing here.  In addition, at the time of Holt's arrest, any marijuana possessed by a person without a medical marijuana certificate—which Holt never mentioned or displayed during the course of the traffic stop or subsequent frisk and arrest and does not now claim he ever had—remained "contraband" that law enforcement officers were required to seize and destroy.  Conn. Gen. Stat. §21a-279a(b) (effective July 1, 2011 to June 30, 2021); *see also State v. Brito*, 170 Conn. App. 269, 315-316 (2017) ("Although the defendant's possession of the marijuana roach constituted a minor civil violation, and not a crime, his possession of the roach nonetheless was evidence that he was in possession of contraband at the time of the stop … The facts, in their totality, gave rise to probable cause that there was contraband, which the police were authorized to seize and destroy, inside the vehicle.").  This further undermines Holt's argument that the decriminalization of possession of small amounts of marijuana rendered the

odor of marijuana and Holt's statement insufficient to support probable cause to search the vehicle. The mere possibility that the vehicle may have contained hemp or marijuana possessed pursuant to a valid medical marijuana certificate does not mean that the officers lacked probable cause to search Holt's car for contraband. *See United States v. Colon*, No. 10-cr-498 (RPP), 2011 WL 569874, at \*12 (S.D.N.Y. Feb. 8, 2011) (holding that odor of marijuana coming from vehicle established probable cause supporting vehicle search because although possession of marijuana was a violation punishable by a fine, possession remained unlawful and, therefore, marijuana remained "contraband").

**IV.    Conclusion**

Because Danaher had reasonable suspicion to stop Holt for a traffic violation and reasonable suspicion to prolong that stop to investigate further, and because the automobile exception applies, I deny Holt's motion to suppress his post-arrest statements and the evidence recovered from the search of his car.

For the reasons set forth above, the motion to suppress (ECF No. 18) is DENIED.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
              November 12, 2021